| | |
|---|---|
| V. Richard Zarling | M.D. |
| W. H. Hengstler | M.D. |
| Hewitt B. Hannah | M.D. |

**Bayard SHARP and Mary M. Sharp, his wife, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Hugh R. SHARP, Jr. and Ada B. W. Sharp, his wife, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. Nos. 2251, 2250.**

United States District Court
D. Delaware.

Dec. 1, 1961.

William S. Potter, of Berl, Potter & Anderson, Wilmington, Del.; Gordon W. Gerber and Kenneth W. Gemmill, Philadelphia, Pa., for plaintiffs.

Leonard G. Hagner, U. S. Atty., Wilmington, Del.; Louis F. Oberdorfer, Asst. Atty. Gen., Lyle M. Turner, Jerome Fink, Richard W. Perkins, Dept. of Justice, Washington, D. C., for defendant.

LAYTON, District Judge.

This is a ruling on cross motions for summary judgment under Rule 56 [1] by taxpayers and defendant in these two actions brought by taxpayers to recover alleged overpayments of federal income taxes for the calendar year 1954. The two actions were consolidated previously on stipulation of counsel.

1. 28 U.S.C.A. F.R.Civ.P. 56.

744

Plaintiffs, Hugh R. Sharp, Jr., and Bayard Sharp, were equal partners in a partnership which on December 17, 1946, purchased a Beechcraft airplane at a cost of $45,875. From 1948 to 1953, additional capital expenditures were made with respect to the airplane in the amount of $8,398.50. Thus, the total cost of the airplane, including capital expenditures, was $54,273.50. Title was held by the partnership. During the period of ownership, the airplane was used by the partnership 73.654% for the personal use of the partners and 26.346% for business purposes.[2] Therefore, the partnership was allowed depreciation on the basis of only $14,298.90, or 26.346% of the airplane's total cost. Depreciation taken by the partnership and allowed on this basis during the period totaled $13,777.92. During 1954, the airplane was sold by the partnership for $35,380. At issue here is the amount of gain or loss realized by the partnership on the sale of the airplane.

The taxpayers earnestly contend that, if anything, they suffered a loss on the sale, but certainly that they realized no gain. They contend that the relevant statutes permit no other conclusion. Taxpayers point out that the basis of property is its cost.[3] The total cost of the airplane was $54,273.50. For determining gain or loss, numerous adjustments in this basis are permissible, including subtracting from the cost basis the amount of depreciation allowed.[4] Since the depreciation allowed on the airplane was $13,777.92, taxpayers have subtracted this amount from $54,273.50, giving an adjusted basis of $40,495.58. The Code explicitly states that the loss recognized on the sale of property is the excess of the adjusted basis over the amount realized from the sale of the property.[5] The selling price of the airplane was $35,380. Accordingly, taxpayers subtracted this amount from the adjusted basis of $40,495.58 and compute their loss on the sale of the airplane as being $5,115.58. The taxpayers, as the Court understands their argument, do not seek to deduct any part of this loss. Their only claim is that no gain was realized on the sale.

The government theory is grounded in the fact that the airplane was used by the partnership 73.654% for pleasure and 26.346% for business purposes. Both the adjusted basis and the proceeds of sale of the plane are allocated in these proportions, giving in effect two sales. A gain on the business part of the sale is balanced against a non-deductible loss on the personal part, producing a net gain. More detail will clarify the government theory. It will be recalled that in computing depreciation, the cost basis was allocated so that depreciation was allowed on only 26.346% of the cost basis, i. e., $14,298.90.[6] The remainder of the cost basis, i. e., $39,974.60, was allocated to the personal use of the airplane and no depreciation was allowed. The government has adjusted only the business basis, by subtracting from $14,298.90 the depreciation allowed, i. e., $13,777.92, producing an adjusted business basis of

2. The stipulation is not precise as to the exact nature of the division into percentages of personal and business use. It was assumed in the briefs and at oral argument, and therefore it is assumed in this opinion, that the parties are agreed, for purposes of ruling on these motions, that the airplane was used from the beginning, and throughout its ownership by taxpayers, approximately ¼ for business and ¾ for pleasure, without variations. Other considerations might apply if the nature of the ¼–¾ division of use had been different. Suppose, for example, during the total 8 years of ownership, that for the first 6 years the plane had been used exclusively for pleasure, and that for the last 2 years it had been used exclusively for business. Under such circumstances, gain or loss might depend not only on the original cost and the depreciation taken but also on the value of the plane when it was converted to a business use. See Treasury Regulations § 1.165–9(b).

3. 26 U.S.C.A. § 1012.

4. 26 U.S.C.A. § 1016(a) (2) (A).

5. 26 U.S.C.A. § 1001(a).

6. See 26 U.S.C.A. § 167(a).

$520.98. Now that the airplane is being sold, the government takes the view that this same allocation should be continued for purposes of gain or loss computation on the sale. Accordingly, the proceeds from the sale of the airplane, i. e., $35,380, have been allocated in accordance with the percentages of past business and personal use into portions of $9,321.21 and $26,058.79, respectively. The government then subtracts the adjusted business basis of $520.98 from the proceeds of the sale which were allocated to the business use of the airplane, $9,-321.21, and concludes that the taxpayers realized a gain of $8,800.23 on the sale. Any loss on the personal use of the airplane is not deductible because of its personal nature and is disregarded. The taxpayers, being equal partners, have each been assessed with a taxable gain on one-half of $8,800.23, or $4,400.11.

Counsel for the government have said this is the first challenge by a taxpayer to Rev.Rule 286, 1953–2 Cum.Bull. 20,[7] and that if the position argued for by the taxpayers be sustained, it would "produce serious and far reaching inequities in the administration of the internal revenue laws."

While research has disclosed no decided case in which an allocation has been made in accordance with percentages of past business and personal use of property, taxpayers are clearly in error if it is their contention that courts will not regard a thing, normally accepted as an entity, as divisible for tax purposes. There are numerous decisions in which the sale proceeds from an orange grove, for instance, have been allocated between the trees (capital gain) and the unharvested crop (income),[8] or where the proceeds from the sale of an interest in a partnership have been allocated between the earned but uncollected fees,[9] or income producing property [10] (income), and the other assets of the business (capital gain). A different sort of allocation was ordered in a leading Third Circuit case, Paul v. Commissioner.[11] In Paul, taxpayer, who was in the business of holding rental property for investment purposes, bought a partially completed apartment building in May, which he sold more than six months later, in November. The issue was whether the taxpayer could treat the entire gain or any part thereof as long term capital gain, under Section 117(j) of the Internal Revenue Code of 1939.[12] The Court held that a portion of the gain must be allocated to the part of the building erected more than six months before the sale and given long term treatment.[13] The remainder of the proceeds allocable to the construction between May and November was taxed as short term gain.

The closest analogy to the case at bar is the sale of depreciable and non-depreciable property as a unit—the sale of a building and land together, for in-

---

7. The relevant portion of Rev.Rule 286, 1953–2 Cum.Bull. 20, reads as follows:

"Only that part of a loss resulting from the sale of property used for both personal and income-producing purposes that can be allocated to the income-producing portion of the property constitutes a loss within the meaning of § 23(e) of the Internal Revenue Code [26 U.S.C.A. (I.R.C. 1939), § 23(e)]. In determining the gain or loss on the sale, there must be an actual allocation of the amounts which represent cost, selling price, depreciation allowed or allowable, and selling expenses to the respective portions of property in the same manner as if there were two separate transactions."

8. See e. g., Watson v. Commissioner, 345 U.S. 544, 73 S.Ct. 848, 97 L.Ed. 1232 (1953); Smyth v. Cole, 218 F.2d 667 (9th Cir.1955).

9. Tunnell v. United States, 259 F.2d 916 (3d Cir.1958); United States v. Snow, 223 F.2d 103 (9th Cir.1955).

10. Williams v. McGowan, 152 F.2d 570 (2d Cir.1945).

11. 206 F.2d 763 (3d Cir.1953); see also Commissioner v. Williams, 256 F.2d 152 (5th Cir.1958).

12. 26 U.S.C.A. (1939) § 117(j).

13. 206 F.2d at 766.

stance. In United States v. Koshland,[14] a hotel caught fire and was destroyed. At issue in the case was the amount of the casualty loss deduction permissible under the circumstances. However, in the course of its opinion, the Court discussed the allocation problem directly, noting that the hotel was depreciable whereas the land on which it stood was not.

"* * * The result is that there is no single 'adjusted basis' for the land and building as a unit. The depreciation allowed or allowable on the building reduces the basis of the building only. No depreciation is allowed on the land, and the original basis of the land therefore remains unaffected. The adjusted basis of the building and the basis of the land cannot be combined into a single 'adjusted basis' for the property as a whole, for to do so would in effect be reducing the basis of the whole by depreciation allowed or allowable only as against the building, a part.

"Thus, for tax purposes, upon a sale of the property as a whole the selling price must be allocated between the land and building and the gain or loss separately determined upon each, by reference to the adjusted basis of each." [15]

This principle has been recognized in other cases without discussion.[16] The taxpayers point out that an airplane is not capable of separation into business and personal uses in the same way that a hotel is separable from the land on which it stands, or in the same way that the unharvested crop may be separated from the trees of the grove, or the accounts receivable from the other partnership assets. There were not two airplanes, say the taxpayers—a business airplane and a personal airplane—there was one airplane. There were not two sales; there was but one sale, one adjusted basis and one selling price. Any division or allocation, therefore, involves resorting to fiction, which is anathema to the tax law.

The taxpayers' argument against allocation in this case has superficial appeal. The whole idea of allocation is lacking in explicit authority from the literal words of the relevant sections in the Code. Since the situation here is not covered literally by the Statute, perhaps any interstices in statutory coverage should be filled by Congress not the Court. But this argument ignores the basic fact that no tax statute can encompass every situation which may arise. The Statute is phrased in general terms leaving it to the Commissioner by regulation or ruling and the Courts by interpretation to solve problems arising under unusual and novel facts. Merely because Congress did not specifically provide for the facts presented here does not mean it intended to exempt profits arising from the sale of property used both for business and pleasure. The taxpayers' argument also overlooks the fact that allocation has long been accepted by the courts in other cases. In dealing with another allocation problem, the Third Circuit Court of Appeals has said:

"The federal revenue laws are to be construed in the light of their general purpose 'so as to give a uniform application to a nation-wide scheme of taxation.' Burnet v. Harmel, 1932, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199; United States v. Pelzer, 1941, 312 U.S. 399, 402, 61 S.Ct. 659, 85 L.Ed. 913; Lyeth v. Hoey, 1938, 305 U.S. 188, 194, 59 S.Ct. 155, 83 L.Ed. 119." [17]

14. 208 F.2d 636 (9th Cir.1954).

15. 208 F.2d at 640.

16. See, e. g., Crane v. Commissioner, 331 U.S. 1, 4-5, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947); Tracy v. Commissioner, 53 F. 2d 575, 577 (6th Cir.1931); Belle Isle Creamery Co. v. Commissioner, 14 B.T.A. 737, 738 (1928); C. D. Johnson Lumber Corp. v. Commissioner, 12 T.C. 348, 356, 365 (1949).

17. Paul v. Commissioner, 206 F.2d 763, 765-766 (3d Cir.1953).

But if taxpayers' theory prevails, there will be lack of uniformity in tax treatment between those who use property partially for business and pleasure on the one hand, and those who use property exclusively for business on the other. To use round figures, if property used exclusively for business has an adjusted basis of $500 ($14,000 cost less $13,500 depreciation) and it is sold for $9,000, nobody will deny that a taxable gain of $8,500 has been realized. Now, suppose that a larger piece of property is used only ¼ for business purposes and ¾ for pleasure, but that the adjusted basis of the business part is the same as in the first example, namely $500, and that depreciation figures and cost of the business part are also the same. Taxes levied on the business segment of the larger property should not be different from taxes levied on the other property used exclusively for business. To put it another way, taxpayers having two business properties with the same cost and depreciation should pay the same taxes, if the properties are sold for the same price. The fact that one of the properties was also used for pleasure should make no difference.

Under the government's allocation theory, uniformity is achieved; under the taxpayers', it is not. If the government's theory involves, as the taxpayers suggest, "dividing" the plane up, it can only be replied that this is precisely what was done in calculating the depreciation deduction to which the taxpayers acquiesced. There is no greater peculiarity in doing the same thing when computing gain or loss on a sale. The depreciable business use and non-depreciable personal use of the airplane are not essentially different from the depreciable hotel and non-depreciable land discussed in the Koshland case, supra.

The fairness of the government's theory can be seen more easily using a different analysis. This different analysis involves allocation of loss instead of sale proceeds and cost basis. Continuing the use of round numbers, the $20,000 loss on the sale of the airplane (cost of $55,000 less sale proceeds of $35,000) can be allocated ¾ to the personal use and ¼ to the business use. If the property had not been depreciable, but used in the same fashion, it would seem proper that the taxpayer should be allowed to deduct $5,000 as a business loss—no more, no less. Since depreciation deductions were taken in our case with respect to the business use of the airplane of about $13,500, and whereas the actual loss on this part of the plane's use was only $5,000, it would appear that taxpayer has received fortuitously the benefit of depreciation deductions equal to the difference between $13,500 and $5,000, or $8,500. Even though all depreciation was allowed or allowable, it is the government's position that the "excessive" depreciation should be taxed.[18] This Court agrees.

Application of the rationale and certain of the language of Paul v. Commissioner [19] to the instant case compels the following conclusion. Allocation of the proceeds from the sale of this plane in accordance with its percentages of business and personal use is "practical and fair." This Court believes that Rev. Rule 286, 1953–2 Cum.Bull. 20, as applied here, represents a reasonable exercise by the Commissioner of his rule making power. There is no reason to make this an "all or nothing proposition." It is realistic to recognize that there are "gradations" between the percentage of business and personal use of a piece of property. It is concluded here that it is "proper that those gradations have tax significance."

18. Assuming that taxpayers are in a high tax bracket, it may be noted that complete equalization of tax benefits is not accomplished in the government's theory. Taxpayer took the $8,500 "excess" depreciation as ordinary deductions. Taxpayers are now being taxed on this amount at only capital gain rates. It would seem that taxpayers are still ahead.

19. 206 F.2d 763, 766 (3d Cir.1953).

The taxpayers' motion for summary judgment is denied and the government's is granted. Let an order be submitted in conformity herewith.