WILDEN L. SNYDER and MARY L. SNYDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Snyder v. Commissioner
Docket No. 158-70.
United States Tax Court
T.C. Memo 1975-221; 1975 Tax Ct. Memo LEXIS 149; 34 T.C.M. (CCH) 965; T.C.M. (RIA) 750221; July 9, 1975, Filed Wilden L. Snyder, pro se. Robert P. Ruwe, for the respondent. HOYT
MEMORANDUM FINDINGS OF FACT AND OPINION HOYT, Judge: Respondent determined deficiencies in income tax and additions thereto against petitioners as follows: Additions to Tax Year
Deficiency
Sec. 6651(a) [1]
Sec. 6653(a)
1963
$2,992.30
$565.63
$191.60
1964
2,050.23
379.43
148.18
1965
1,603.31
80.17
*152 Certain concessions having been made, the issues remaining for our consideration are: 1. Whether petitioner [2] should be allowed deductions for the following items: business expense deductions for amounts paid to his minor children during 1963 and 1964; business expense deductions for automobile depreciation for 1963, 1964 and 1965 and airplane depreciation for 1963; business expense deductions for automobile repairs and operation for 1963 and 1964, and as claimed at trial for 1965; business expense deductions for airplane operating expenses and rent on a hangar for 1963; a loss claimed to have been incurred on the sale of the airplane in 1963; amounts claimed as insurance expenses for 1963 and 1964; amounts claimed as legal expenses for 1963 and 1964; amounts claimed as travel and promotional expenses for 1963 and 1964, and as claimed at trial for 1965; and the amount claimed as advertising expense for 1964. *153 2. Whether petitioner realized a long-term capital gain from the sale of stock in a tavern during 1964. 3. Whether respondent's determination of petitioner's gross business receipts in 1965 by use of the bank deposits method is proper. 4. Whether petitioner is liable for additions to tax under section 6651(a)(1) for failure to file timely returns for 1963 and 1964. 5. Whether any part of the underpayment for each of the years 1963, 1964 and 1965 was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). 6. Whether $103.59 and $26.88 of the amounts taken as investment credits for 1963 and 1964, respectively, are allowable. 7. Whether petitioner is liable for self-employment tax in 1965, and, if so, the proper amount of tax. FINDINGS OF FACT Some of the facts have been stipulated by the parties. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners are husband and wife, who resided in Goshen, Indiana, during the taxable years at issue herein and at the time the petition was filed. Their joint income tax returns for 1963, 1964 and 1965 were filed with the district *154 director of internal revenue, Indianapolis, Indiana. During 1963 and 1964 petitioner operated a private surveying business and served as County Surveyor for Elkhart County, Indiana. After leaving his position with the county, petitioner continued his own surveying business, but failed to report income or expenses from surveying on his 1965 tax return. Respondent reconstructed petitioner's 1965 gross income by analyzing deposits to his checking accounts. Respondent also allowed substantial deductions for business expenses in 1965, computed largely by reference to petitioner's expenses in prior years since his business records for 1965 were inadequate. Business Expenses - Labor of Children
On his returns for 1963 and 1964, petitioner deducted labor expenses of $2,385.66 and $2,407.94, respectively, which included $1,179.46 and $1,166.34, respectively, paid to his two minor children. In the statutory notice, respondent disallowed the amounts paid to the children after determining that the amounts were not ordinary and necessary expenses paid or incurred in a trade or business. Two checks, each in the amount of $589.73, dated December 20, 1963, and payable to Laurie Snyder *155 and Roger Snyder, respectively, were drawn on an account in the name of Wilden L. Snyder - Surveyor, at the First National Bank of Goshen, Indiana. These checks were endorsed by the respective payees, endorsed by petitioner, and on December 31, 1963, were deposited in the same account upon which they had been drawn. Two checks, each in the amount of $583.17, dated December 27, 1964, and payable to Laurie Snyder and Roger Snyder, respectively, were drawn on Account No. 544-416-6, Salem Bank and Trust Company, Goshen, Indiana, in the name of Wilden L. Snyder - Surveyor. These checks were also endorsed by the respective payees, but not by petitioner and on December 31, 1964, were deposited in the same account upon which they had been drawn. Petitioner's son, Roger Snyder, was born on July 20, 1952. His daughter, Laurie Snyder, was born on November 11, 1954. At the time the first above-mentioned payments were made, they were 11 and 9 years old, respectively. Business Expenses - Business Use of Automobiles
Petitioner's private surveying business required substantial local travel. He owned several automobiles, which he depreciated in various degrees for business usage. Two of *156 the automobiles owned by petitioner in 1963 were station wagons. On his 1963 income tax return, petitioner deducted a total of $2,467.23 for depreciation of assets used in his business. Of this amount, respondent disallowed all of the depreciation claimed for automobiles ($887.50). [3]
Petitioner deducted a total of $1,567.68 for depreciation of business assets on his 1964 return. Of this amount, respondent disallowed all of the depreciation claimed for automobiles ($1,030.94), and increased the allowance for depreciation of equipment by a total of $22.60, resulting in a net increase in taxable income of $1,008.34. No deductions for depreciation were claimed by petitioner on his 1965 return. Respondent allowed deductions for depreciation of equipment, other than automobiles, totaling $758.83 in 1965. No depreciation deduction was allowed for automobiles. The following *157 table sets forth the automobiles with respect to which depreciation deductions were claimed in 1963 and/or 1964, and amounts of depreciation claimed on each, all of which deductions were disallowed by respondent: 1963
1964
1960 Ford station wagon
$312.50
1963 Falcon station wagon
250.00
$515.81
1962 Ford T-Bird
125.00
258.88
1963 Ford
200.00
1964 Ford Falcon 4-door
256.25
Petitioner paid $890.93 and $250.58 in 1963 and 1964, respectively, for automobile repairs. On his 1963 and 1964 income tax returns petitioner deducted $909.11 and $514.28, respectively, for auto repairs. Petitioner paid other auto expenses of $1,291.22, $1,003.82 and $599.46 during 1963, 1964 and 1965, respectively. On his 1963 and 1964 income tax returns petitioner deducted $1,225.89 and $1,055.33, respectively, for auto expenses (in addition to auto repairs). Both deductions were disallowed by respondent in their entirety. Petitioner claimed no deduction for automobile operating expenses in 1965. Business Expenses - Business Use of Airplane
During 1963 petitioner owned a small private aircraft, which he used for business and pleasure. On his income tax returns for *158 the years during which he owned the aircraft he claimed that his business usage amounted to 80 percent of its total usage. During 1963 petitioner paid airplane expenses of $366.40 and hangar rental of $250. On his 1963 income tax return petitioner deducted $1,356.31 as plane repairs, $378.48 as airplane expense, $200 as rental expense for the hangar, $880 as depreciation of the airplane and $160 as depreciation of the airplane engine, all of which deductions were disallowed by respondent. Business Expenses - Insurance
Petitioner made payments of $540.31 to insurance companies in 1963. On his returns for 1963 and 1964, petitioner deducted $978.65 and $549.60, respectively, as insurance expenses. Respondent disallowed $955.25 and $526.20, respectively, of these amounts. No deduction for insurance expenses was claimed or allowed for 1965. Business Expenses - Legal Fees
On October 17, 1963, petitioner issued a check for $2,701.33, payable to Woody L. Caton, Sheriff. On October 10, 1964, petitioner issued a check for $100 to Dick Mehl, an attorney, for representing him at a traffic violation hearing. On his returns for 1963 and 1964, petitioner deducted $880 and $287, *159 respectively, as legal fees, $800 and $100 of which were disallowed by respondent. Business Expenses - Travel and Promotion
Petitioner paid travel expenses of $1,413.94 and $1,824 in the years 1963 and 1964, respectively. A portion of the travel expenses paid in 1963 was incurred in connection with the business of a corporation known as Slurry Seal in which petitioner owned an approximate 90 percent interest. In 1965 petitioner made the following payments: Check No.
Date
Payee
Amount
302
2-01-65
American Express
$110.77
303
2-01-65
Diners Club
253.13
312
2-11-65
American Express
8.60
360
3-23-65
American Express
391.44
429
7-09-65
American Express
96.01 In his income tax returns for 1963 and 1964 petitioner deducted $1,609.76 and $2,330.47, respectively, as travel and promotional expenses, which deductions were disallowed in their entirety by respondent. Petitioner did not claim, nor did respondent allow, any deduction for travel and promotional expenses in 1965. Business Expenses - Advertising
On his 1964 return, petitioner deducted $1,129.81 as advertising expense. This amount was disallowed in its entirety by respondent, *160 based on his determination that it represented nondeductible campaign expenses incurred by petitioner in seeking reelection as county surveyor. [4]
Loss on Sale of Airplane
On October 2, 1963, petitioner sold his airplane for $7,500. His total cost for this plane was $15,586.25, and he had taken $5,920 depreciation to the date of sale, based upon 80 percent claimed business usage. Based upon such claimed business usage of 80 percent, petitioner deducted a long-term capital loss of $549 in his 1963 return. Respondent disallowed the loss because the business use of the airplane had not been established. Sale of Tavern Stock
During 1964, petitioner sold his stock in a tavern for total consideration of $14,208.60. The cost of the stock, which he had held for longer than six months, was $12,500. This sale was not reported on petitioner's 1964 return. Unreported Income
Petitioner's 1965 income tax return reported income as "none" and was for all practical purposes a blank form. However, during 1965, deposits totaling $24,632.73 were made to petitioner's two checking *161 accounts. Failure to File Timely Returns
Petitioner's 1963 income tax return was dated December 30, 1964, and was received by the district director on January 4, 1965. He had been granted an extension of time for filing until May 15, 1964. His income tax return for 1964 was filed on June 23, 1966. Negligence or Intentional Disregard of Rules and Regulations
During 1963, 1964 and 1965, petitioner maintained no business books of account as required by section 6001, although he was aware that he was required to maintain business books and records. On brief, petitioner acknowledged that he had been advised by an employee of the IRS office in Elkhart, Indiana, to set up business books of account. In 1958, petitioner paid a CPA more than $3,000 to set up a set of books which would clearly reflect his income. During a subsequent IRS audit, petitioner understood a request by an employee of the IRS office in Mishawaka, Indiana, to see his canceled checks and receipts to mean that he no longer had to keep books of account. He therefore stopped maintaining such records in 1961 or 1962. Investment Credit
On his return for 1963, petitioner claimed an investment credit of *162 $110.48 on property having a cost of $4,734.74. Respondent allowed a credit of $6.89 on property with a cost of $295.30. The disallowed amount consisted primarily of the credit claimed for petitioner's 1963 Ford Falcon station wagon, which was purchased in 1963 at a cost of $2,646.77, and his 1963 Ford. Petitioner claimed an investment credit for 1964 of $47.81, representing the credit on a 1964 Ford Falcon having a cost of $2,050. This was disallowed by respondent. However, respondent did allow a credit of $20.93 for equipment having a cost of $299, which credit had not been claimed on petitioner's return. Self-Employment Tax for 1965
In his statutory notice respondent determined that petitioner had net earning of $11,515.35 from self-employment in 1965. Accordingly, he determined that petitioner owed self-employment tax of $259.20, computed under the provisions of sections 1401 and 1402(a), as applicable to the year 1965 (5.4 percent of $4,800, the maximum self-employment income base). ULTIMATE FINDINGS OF FACT 1. Checks written by petitioner to his two minor children in 1963 and 1964 did not represent payments to them in compensation for services. 2. Petitioner used *163 his two station wagons solely for business in 1963. In 1964 and 1965 petitioner used his 1963 station wagon solely for business. No other automobiles were used in his business. His business usage of his private airplane was 50 percent in 1963. 3. Petitioner spent the following amounts for repairs and expenses attributable to business use of his automobiles: 1963
1964
1965
Auto repairs $400 $150 $150
Auto expenses
450
400
400
4. In 1963 petitioner incurred business expenses of $183.20 for operation of his airplane and $125 for hangar rental, based upon business usage of 50 percent. 5. Petitioner failed to prove that he had any expenditures for insurance in 1964 and failed to prove that any portion of his claimed insurance expenses for 1963 and 1964 was business related. 6. Petitioner incurred business-related legal expenses of $80 and $187 for 1963 and 1964. 7. Petitioner's records regarding travel and promotional expenses deducted for 1963 and 1964 are inadequate to substantiate such claimed deductions. 8. Petitioner incurred $38.21 in business advertising expenses for 1964. The remainder of the claimed expense represented campaign *164 expenses. 9. Petitioner's basis, for tax purposes, of the stock in a tavern which he sold during 1964 was $12,500. 10. Petitioner had unreported gross income of $24,632.73 in 1965. 11. Petitioner's returns for 1963 and 1964 were each filed more than five months late. 12. Part of the underpayment for each of the years at issue was due to petitioner's negligence or intentional disregard of rules and regulations. OPINION It is clear that respondent's determination of deficiencies, as set forth in the statutory notice for each of the years before us, is presumed to be correct and that petitioner has the burden of establishing error therein. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142, Rules of Practice and Procedure, United States Tax Court. Business Expenses
The first issue in this case is whether petitioner should be allowed a business expense deduction for amounts paid to his minor children during 1963 and 1964. In our judgment, petitioner has failed to meet his burden of showing that the payments to his children in these years were made for *165 "services actually rendered" in his business within the meaning of section 162 and Income Tax Regulation 1.162-7. While petitioner generally testified that his children (aged 11 and 9) cleaned the office and made blueprints and that his son also helped him perform private surveys, he failed to have them testify or to otherwise provide any corroboration for his self-serving testimony. He failed to testify to or produce records of their work schedules, hours worked or rate of pay. The canceled checks (representing equal sums paid in one check to each child at year end) and the bank statements, offered in evidence, indicate that within a few days after the checks for the payments in question were drawn, they were redeposited in the same checking account upon which they had been drawn. This was true as to both the 1963 payments and the 1964 payments. Based on the record, we believe that petitioner has failed to prove that bona fide payments were made to the children or that they actually performed any work for his business. Sworn testimony alone may suffice as proof *166 at times, but, where, as here, it is general and conclusory in nature and subject to doubt, it fails to meet the petitioner's burden of proof. Reginald G. Hearn,36 T.C. 672-674 (1961), affd. 309 F.2d 431 (9th Cir. 1962), cert. denied 373 U.S. 909 (1963). Petitioner contends that several automobiles were used in his private surveying business, which he conducted in addition to his employment as surveyor for Elkhart County. However, he has failed to provide any proof, other than his own testimony, of such business usage. Here again petitioner's unsubstantiated sworn testimony was of such doubtful character and so summary and conclusory in nature that it fails to meet his burden of proof. Reginald G. Hearn,supra.To allow petitioner's testimony regarding the correctness of his returns to meet the burden of proof would mean that the Commissioner's adjustments would not be presumptively correct where the taxpayer swore to the correctness on his return. Louis Halle,7 T.C. 245 (1946), affd. 175 F.2d 500 (2d Cir. 1949), cert. denied 338 U.S. 949 (1950), applying what is generally called *167 the Cohan rule. [5]
We are convinced that petitioner's private surveying business often required the use of an automobile, but we are equally certain that the claimed business usage of five automobiles is unsupported by the record. Applying the Cohan rule, we have found that petitioner utilized his two station wagons solely for business purposes, and, accordingly, he is entitled to depreciation as claimed for the station wagons, $562.50 for 1963 and $515.81 for 1964. In determining petitioner's taxable income for 1965, respondent estimated substantial deductions for business expenses. In accordance with his contention that petitioner's automobiles were not used for business purposes in 1963 and 1964, respondent allowed no deductions in 1965 for automobile depreciation, repairs, or operating expenses. Since we have allowed *168 petitioner automobile deductions for 1963 and 1964, and since we consider it no more likely that he could have carried on his business without transportation in 1965 than in the earlier years, we conclude that he is entitled to business expense deductions for 1965 approximating the depreciation, operating expenses, and repairs allowable for one automobile. Accordingly, we allow a deduction for depreciation of a business automobile in 1965 in the amount of $515. Petitioner produced no records and no specific testimony regarding amounts spent for auto repairs and other auto expenses, nor evidence of the number of business miles driven. However, having found that petitioner used the station wagons in his business, we will apply the Cohan rule here as well. Accordingly, we have found that petitioner incurred the following deductible expenses which we consider the maximum which may be allowed on the basis of the scanty evidence before us: 1963
1964
1965
Auto repairs $400 $150 $150
Auto expenses
450
400
400
We are convinced by petitioner's testimony that he used his airplane to inspect bridges for a Michigan client and for meetings with various *169 state agencies. But petitioner again failed to keep adequate records as to usage, and his testimony lacked any degree of preciseness as to business use. While petitioner's business use of the plane may have been as great as his general estimate of 80 percent, his failure to keep adequate records must rest upon his shoulders alone. In such a case, we feel that any estimate we make regarding usage should bear heavily against the petitioner. See Cohan v. Commissioner,supra.Based on the limited evidence before us we have found that petitioner's business usage of the plane in 1963 was 50 percent and that he is entitled to depreciation deductions in that year of $831.10 on the plane and $151.10 on its engine. On his 1963 return, petitioner deducted $1,356.31 for airplane repairs, $378.48 for airplane expenses and $200 for hangar rental. At trial, he was able to prove airplane expenses totaling only $366.40 and hangar rental of $25 per month for 10 months or total rent of $250. Based on these figures and our finding that petitioner's use of the plane was 50 percent business related, we have found that petitioner is entitled to deductions of $183.20 for airplane *170 expenses and $125 for hangar rental, but is entitled to no deduction for airplane repairs for this year. While it is possible that petitioner incurred some expense for airplane repairs, he presented no evidence on this issue at trial, and we cannot even approximate what repairs may have been made in 1963 or the amount paid therefor in that year. Petitioner claimed $978.65 and $549.60 as insurance expenses for 1963 and 1964, respectively. Respondent allowed only $23.40 in each year. Petitioner established and the parties stipulated that petitioner paid $540.31 to insurance companies in 1963. While there is no dispute that the 1963 payments were made, the record does not show what portion, if any, of the payments was for business-related insurance and what portion was personal, and not deductible. The Court afforded petitioner the opportunity to bring in such evidence, which he claimed to have at home, but he failed to produce it. Since section 262 disallows any deduction for personal expenses, the Court cannot allow any portion of these expenses that are not business related. Petitioner has *171 failed to present any competent evidence on this issue; we therefore must conclude that respondent's disallowance was correct. This is not a situation for the application of the Cohan rule since petitioner must first prove that some of his expenses were definitely deductible before the Court can approximate an allowable deduction. Mayrath v. Commissioner,357 F.2d 209, 214 (5th Cir. 1966). Petitioner failed to prove that he made any expenditures for insurance in 1964. Since section 162 allows a deduction for trade or business expenses only when such expenses have been "paid" or incurred during the taxable year," taxpayer has failed to meet his initial burden of showing that he made the requisite payments. We therefore conclude and hold that petitioner is not entitled to any deduction in 1964 with respect to insurance. For 1963 and 1964, petitioner deducted legal fees of $880 and $287, respectively. Respondent allowed only $80 and $187, respectively, of the amounts claimed. Petitioner testified that the $800 disallowed for 1963 represented the fee paid to an attorney representing a bank in a suit against him for collection of a loan. He alleges that this *172 sum was included in a check for $2,701.33 paid to "Woody L. Caton, Sheriff", allegedly in the amount of the judgment and attorney's fees. Petitioner has not only failed to prove that he paid the attorney involved in this unusual manner, but, more importantly, he has failed to prove a business or profit motive for the loan involved. The $100 attorney fee disallowed for 1964 was paid for representing petitioner on traffic violations. There is no dispute that this sum was paid to an attorney, but petitioner failed to show that the traffic violations had the business origin necessary to support a deduction under section 162. The test of deductibility here is not the possible adverse effect upon petitioner's business activities, but whether or not the claim arises in connection with petitioner's business activities. United States v. Gilmore,372 U.S. 39, 48 (1963). Based on the record, we conclude that respondent's disallowance of the deductions for legal fees was proper. Petitioner's deductions for travel and promotional expenses for 1963 and 1964 were disallowed in *173 their entirety by respondent. Respondent has stipulated that petitioner paid expenses for travel away from home of $1,413.93 and $1,824 in these years. Petitioner also established at trial that he paid $859.95 in 1965 for travel and promotional expenses. However, we find that petitioner has failed to establish, as required by section 274, which portions of these amounts were for business purposes or if indeed any part thereof was related to business. It is clear from the language of section 274(d) that no deduction is allowable for entertainment expenses or for the expenses of travel away from home absent substantiation by adequate records or "by sufficient evidence corroborating" the taxpayer's own statement of the amount and business nature of the expenses. Neither "adequate" (records) nor "sufficient" (evidence) is defined in section 274. However, their meaning is explained in section 1.274-5(c), Income Tax Regs. An adequate record consists of an entry in an "account book, diary, statement of expense or similar record," made "at or near the time of expenditure, *174 " or documentary evidence such as a receipt or paid bill (required for lodging away from home or expenditures over $25) sufficient to establish the amount of the expense, and the time, place and business purpose of the expenditure. These stringent requirements were necessitated by taxpayer abuse of travel and entertainment expenses and are properly within the powers delegated to the Commissioner by sections 274(h) and 7805. In the instant case, petitioner maintained no records to substantiate the business nature of his expenditures. In view of the clear language of the statute and regulations, we must sustain respondent's disallowance of the claimed deductions. While we feel relatively certain that some of the expenses were business related, this is not an area for application of the Cohan rule, as it is clear that Congress intended section 274(d) to overrule the Cohan rule with respect to entertainment expenses. William F. Sanford,50 T.C. 823, 829 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). Furthermore, some of the travel expenses were incurred on behalf of petitioner's corporation, *175 Slurry Seal, and could not be deducted on his personal return even if proved to be business related. Jacob M. Kaplan,21 T.C. 134, 145 (1953). Petitioner has conceded that $1,091.60 of the amount deducted on his 1964 return as advertising expense represented nondeductible campaign expenses. We believe that petitioner has proved that the remainder of the amount claimed, $38.21, represented expenditures for legal advertisements, relating to his surveying activities and, as such, represented a valid business expense. Loss on Sale of Airplane
In determining whether there is a gain or loss on the sale of petitioner's airplane in 1963, an allocation must be made for tax purposes between the portion of the plane's use devoted to pleasure or personal purposes and the portion devoted to petitioner's business; the gain or loss must be separately determined for each part. Sharp v. United States,199 F. Supp. 743 (D.C. Del. 1961), affd. per curiam 303 F.2d 783 (3d Cir. 1962). In Sharp, the court determined that the sale of the hypothetical *176 portion of an asset devoted to a business use must be treated separately from the sale of the portion devoted to personal use and that all of the depreciation deducted in prior years must be allocated to the business portion in determining the taxpayer's adjusted basis for that portion under section 1012, and hence his gain or loss on the sale. The situation in the instant case is somewhat more complex, since we have found that petitioner's business usage of the airplane amounted to 50 percent in 1963, while depreciation deductions in prior years had been based on a business usage of 80 percent. [6]
Following the Sharp rationale, the sale of the airplane in the instant case consisted of three elements: *177 (1) the sale of the minimum of 50 percent of the plane which had been used for business purposes in each year the plane was owned by the petitioner, including the year of sale (the business element); (2) the sale of the minimum of 20 percent of the plane which had been used for personal purposes at all times (the personal element); and (3) the sale of the 30 percent of the plane which had been used for business in each year until 1963, at which time this portion reverted to personal use (the mixed element). No depreciation was ever allowed on the personal element, so petitioner's basis for gain or loss on that element is 20 percent of his total cost, without reduction for depreciation. On this portion of the sale, petitioner realized a nondeductible personal loss. Section 262. The depreciation allocable to the business element amounts to all of the 1963 depreciation allowed, plus 5/8 (50 percent divided by 80 percent) of the pre-1963 depreciation. Petitioner's adjusted basis in the business element is computed as follows: 50% of cost
$7,793.13
Less: 1963 depreciation
$ 982.20
Allocable portion
of depreciation
allowed in prior
years
3,050.00
4,032.20
Adjusted basis
(business element)
$3,760.93
*178 The amount realized on the sale of the business element was $3,750 (50 percent of the sale price of $7,500), resulting in a loss of $10.93. The character of this loss is to be determined under section 1231, since the business element of the plane was property used in petitioner's trade or business. Petitioner's adjusted basis in the mixed element is computed as follows, allocating 3/8 (30 percent divided by 80 percent) of the pre-1963 depreciation thereto: 30% of cost
$4,675.88
Less: Allocable portion of
pre-1963 depreciation
1,830.00
Adjusted basis (mixed element)
$2,845.88
The amount realized on the sale of the mixed element was 30 percent of the sale price of $7,500, or $2,250, resulting in a nondeductible personal loss of $595.88, since at the time of the sale the mixed element had been converted to personal use. Section 262. Sale of Tavern Stock
During 1964, petitioner sold his stock in a tavern for $14,208.60. Although his cost of the stock, which was held longer than six months, was $12,500, he did not report the sale on his 1964 return because he alleges that when he purchased the stock he paid an additional $2,500 in cash for inventory, *179 which amount, if added to his $12,500 cost of the stock, would have resulted in a loss on the sale. The record discloses no evidence to support petitioner's uncorroborated testimony concerning the alleged $2,500 payment. In addition, we have substantial doubts concerning the reliability of this testimony. We think it significant that petitioner reported a loss of $549 incurred on the sale of his plane in 1963, yet neglected to deduct an alleged loss of $791.40 here. Because petitioner failed to prove that the additional expenditure was made, we have found that his basis in the stock sold was $12,500, and therefore, he realized a long-term capital gain of $1,708.60 on such sale. Unreported Income
Petitioner's income tax return for 1965 reported income as "none" and was essentially a blank form. However, he made deposits of $24,632.73 during the year to his two checking accounts. Since petitioner kept no books or accounting records for his business, respondent determined his taxable income by using the bank deposit method of income reconstruction. Section 446 requires that taxable *180 income be computed using the method of accounting regularly used by the taxpayer. Where a taxpayer does not keep records from which actual income can be determined, the Commissioner may use any reasonable method which clearly reflects the taxpayer's income. Boyett v. Commissioner,204 F.2d 205, 208 (5th Cir. 1953). The bank deposit method is recognized as one of the accepted methods for reconstructing income. In using this method, the Commissioner may properly assume that all bank deposits are taxable income unless petitioner presents proof to the contrary. Cummings v. Commissioner,410 F.2d 675, 678 (5th Cir. 1969). Respondent's determination has the presumption of correctness here. Mills v. Commissioner,399 F.2d 744, 749 (4th Cir. 1968). While an arbitrary assessment will negate this presumption, Helvering v. Taylor,293 U.S. 507, 514 (1935), petitioner has not made such an argument and we do not believe that he could make such a showing. His only objection to the inclusion of all bank deposits in gross income is that part of the deposits represented borrowed funds for which respondent made no adjustment. *181 However, petitioner could not recall the dates on which the alleged loans were made nor their amounts, and his wife testified that the borrowed funds may not have been deposited in their checking accounts. Because petitioner has failed to show that non-income items were erroneously included in respondent's computation, we uphold respondent's determination that petitioner had gross business receipts of $24,632.73 for 1965. Petitioner's complaint that he is being taxed on his gross receipts is without substance since the statutory notice and this Court have allowed him substantial deductions for business expenses incurred in 1965. Respondent also allowed him a standard deduction of $1,000 under section 141 and four $600 exemptions under section 151. Failure to File Timely Returns
Petitioner's return for 1963 was filed, at the earliest, on December 30, 1964. His return for 1964 was filed on June 23, 1966. Petitioner was granted an extension of time for filing his 1963 return to May 15, 1964. An extension was also granted as to petitioner's return for 1964, but the duration of the extension is not apparent from the record. *182 Section 6651(a) imposes addition to the tax liability in cases where the tax return is not filed on or before the required filing date, unless the taxpayer establishes that the late filing is due to reasonable cause and not wilful neglect. The addition to tax is computed as 5 percent of the tax liability for each month or fraction thereof from the required filing date until the date of filing, but not exceeding 25 percent in the aggregate. Respondent asserted additions to tax of 25 percent of the respective deficiencies for 1963 and 1964, in accordance with section 6651(a). With this action we agree, since we have found that petitioner's returns for both years were filed more than five months late. Petitioner neither demonstrated that his returns were filed within the time required (or allowed by extension), nor that his failure to file timely returns was due to reasonable cause and not due to wilful neglect. Negligence or Intentional Disregard of Rules and Regulations
Respondent determined under section 6653(a) that petitioner is liable for the 5 percent addition to tax for negligence or intentional disregard of rules and regulations for each of the years 1963, 1964 and 1965. *183 Petitioner's failure to keep business books of account as required by section 6001 is sufficient to justify the imposition of the 5 percent addition to tax imposed by section 6653(a). Joseph Marcello, Jr.,43 T.C. 168, 182 (1964). Petitioner's unwarranted reliance on an IRS agent's request to see his canceled checks and receipts as indicating that he need not maintain books of account cannot be relied upon to bar the addition to his tax. Even if an IRS agent had in fact given him incorrect advice, respondent is not bound by his agent's misstatement of the law, as an administrative employee cannot change a law enacted by Congress. Ben Stocker, et al,12 B.T.A. 1348, 1351 (1928). Based upon the record and petitioner's admissions, we believe that petitioner has not overcome the presumption of correctness which respondent's determination possesses. We have, therefore, found that part of the underpayment for each of the years in question was due to negligence or intentional disregard of rules and regulations, and petitioner is, therefore, subject to the 5 percent addition to tax for each such year. James S. Reily,53 T.C. 8, 14 (1969). *184 Investment Credit
Respondent disallowed that part of the investment credit claimed for 1963 and 1964 which represented the credit on automobiles determined by respondent to have been used for personal purposes. Section 48, which describes property on which an investment credit may be claimed, included prior to its amendment in 1971, only property which could be depreciated or amortized and which had a useful life of four years or more. We have already determined that since petitioner used his 1963 station wagon in his business it was depreciable. Since it was tangible personal property and had a useful life of at least four years, petitioner is entitled to an investment credit of $61.76. This is based upon his cost of $2,646.77, and an applicable percentage of 33-1/3 percent, which gives a qualified investment of $882.28 on which the 7 percent credit is computed. Thus, considering respondent's previous allowances of $6.89 for 1963 and $20.93 for 1964, petitioner is entitled to total investment credits of $68.65 for 1963 and $20.93 for 1964. Self-Employment Tax for 1965
On his 1965 return petitioner reported no income and no self-employment tax liability. Respondent *185 determined that the net profit from petitioner's business was $11,515.35 and that this constituted self-employment income as defined by section 1402, and thus imposed the self-employment tax pursuant to section 1401. Petitioner offered no evidence on the question of whether his 1965 income was subject to self-employment tax; therefore, the only issue remaining is the amount of self-employment tax which should be determined by reference to section 1401, as it then read. Respondent's determination of a self-employment tax liability of $259.20 was based upon the maximum self-employment income base of $4,800 (at the then applicable rate of 5.4 percent). Since petitioner's self-employment income for 1965, as determined by respondent (even after giving effect to the adjustments required as a result of our findings herein) is greater than such $4,800 base, respondent's original determination must be sustained. To reflect the conceded adjustments and our conclusions with respect to the disputed issues, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated all section references are to the Internal Revenue Code of 1954, as amended.↩
2. References in this opinion to petitionnr or taxpayer are to Wilden Snyder. His wife is a party solely because joint returns were filed for the years in question.↩
3. The difference between the total of individual amounts of depreciation claimed and allowed is $1,927.50, the total of claimed automobile and airplane depreciation; however, only $1,926.90, was disallowed in the statutory notice because petitioner had made a $.60 addition error in the depreciation schedule.↩
4. Petitioner has conceded that $1,091.60 of this amount represented unallowable campaign expenses.↩
5. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930) at 543-544: Absolute certainty [in reconstruction without records] * * * is usually impossible and is not necessary; the Board [Court] should make as close an approximatation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making.↩
6. The record before us disclosed nothing as to the propriety of the depreciation deductions in years not before the Court, and they were apparently not challenged by the respondent. We can only assume therefore that petitioner was justified in computing his depreciation deductions on the basis of 80 percent business usage for years prior to 1963. Thus, we are not faced with the allocation of depreciation deductions where depreciation in prior years is shown to have been improper.↩