KARL R. ALEXANDER III AND MARY T. DUPRE,
PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 27679-89.    Filed August 6, 1991.

*John E. Rogers,* for the petitioners.
*Lisa Primavera-Femia,* for the respondent.

## OPINION

RAUM, *Judge:* Respondent determined a deficiency in income tax for 1985 in the amount of $4,717 against Karl R. Alexander III (Alexander) and Mary T. Dupre (Dupre), husband and wife, who had filed a joint return for that year. Respondent also determined a deficiency in the amounts of $663 and $1,824 against Alexander for his 1982 and 1983 taxable years, respectively, and against Dupre in the amount of $2,487 for her 1982 taxable year. They were single individuals during the earlier taxable years and had filed separate returns for those years. The only matter in dispute is whether petitioners are entitled to a credit against their 1985 income taxes for qualified rehabilitation

expenditures made in that year. The earlier years are involved only by the way of carrybacks, which are not otherwise in dispute. The case was submitted on the basis of a set of stipulated facts and exhibits.

On November 30, 1984, petitioners purchased property at 1932 Mt. Vernon Street in Philadelphia, Pennsylvania, for $72,560. The property consisted of land and a building. The parties have stipulated that petitioners' building is a "certified historic structure." The term "certified historic structure" is defined in section 48(g)(3) of the Internal Revenue Code.[1] On December 1, 1984, petitioners began renovating their building. The renovations were designed to convert the building into two separate living units, one consisting of the first floor and the other of the second, third, and fourth floors.

Petitioners modified the first floor of the building considerably. At the time they purchased the property, the first floor was uninhabitable. The seller had used the entire first floor for furniture refinishing and storage, and it contained no plumbing, bathroom, or kitchen facilities. When petitioners had finished rehabilitating the first floor, it was a one-bedroom, one-bathroom apartment with separate heat, plumbing, hot water, gas, and electric service, and hardwood floors throughout. The parties have referred to the first floor as the "rental portion," and they have stipulated that "The rental portion was placed in service on April 1, 1985."

In contrast to the first floor, the three upper floors were habitable at the time petitioners purchased the building, but were in need of what the parties have characterized in their stipulation as "cosmetic repairs." These floors contained three working bathrooms, two kitchens, and working heating, electric, and gas service. All of these facilities were still in use at the time the stipulation of facts was filed, except that the third floor kitchen had been removed. The renovations completed on the upper floors included completely new walls in one room on the second floor, plaster-patching and painting walls throughout, installing new hardwood floors in the front portion of the second floor, and installing a new

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the taxable years at issue.

refrigerator and a gas clothes dryer. The parties have characterized the second, third, and fourth floors as the "personal use" portion of the property, in which petitioners began to reside in February 1985, and where they continued to reside when the petition herein was filed. Petitioners claimed a credit against their income tax for "qualified rehabilitation expenditures" in the amount of $9,866. Because petitioners did not have sufficient income in their 1985 taxable year to absorb the entire amount of this credit, the remainder was available for carryback to their prior taxable years. Each petitioner carried back 50 percent of the unused credit to his or her prior individual taxable years. Thus, Dupre carried $2,487 back to her 1982 taxable year. Similarly, Alexander carried back $663 to his 1982 taxable year and carried the remaining $1,824 of his 50 percent back to his 1983 taxable year. Respondent determined that petitioners were not entitled to the credit. We sustain respondent's determination.

Section 38 allows an income tax "business" credit, which includes the investment credit determined under section 46(a). Pertinent provisions of the Code appear in the margin.[2] Section 46 provides in relevant part that the

---

[2]SEC. 46. AMOUNT OF CREDIT.

(a) AMOUNT OF INVESTMENT CREDIT.—For purposes of section 38, the amount of the investment credit determined under this section for any taxable year shall be an amount equal to the * * * following percentages of the qualified investment * * *

* * * * * * *

(3) in the case of that portion of the basis of any property which is attributable to qualified rehabilitation expenditures, the rehabilitation percentage.

* * * * * * *

(b) DETERMINATION OF PERCENTAGES.—For purposes of subsection (a)—

* * * * * * *

(4) REHABILITATION PERCENTAGE.—
   (A) IN GENERAL.—

| In the case of qualified rehabilitation expenditures with respect to a: | The rehabilitation percentage is: |
|---|---|
| 30-year building | 15 |
| 40-year building | 20 |
| Certified historic structure | 25 |

* * * * * * *

(C) DEFINITIONS.—For purpose of this paragraph—

* * * * * * *

(iii) CERTIFIED HISTORIC STRUCTURE.—The term "certified historic structure" means a qualified rehabilitated building which meets the requirements of section 48(g)(3).

amount of the investment tax credit for any taxable year shall include 25 percent of the amount of "qualified rehabilitation expenditures" incurred with respect to a "certified historic structure." See sec. 46(a) and (b)(4). Expenditures do not constitute "qualified rehabilitation expenditure[s]" unless they are incurred "in connection with the rehabilitation of a qualified rehabilitated building." Sec. 48(g)(2). In order to be a "qualified rehabilitated building," a building must, inter alia, have been "substantially rehabilitated." Sec. 48(g)(1)(A)(i). Respondent determined that the $9,866 investment tax credit claimed by petitioners is not allowable "because you have failed to establish that you have satisfied the substantial rehabilitation test regarding rehabilitation expenses exceeding the adjusted basis of the building."

In order for a building to have been "substantially rehabilitated," section 48(g)(1)(C)(i) provides that the qualified rehabilitation expenditures during the statutorily prescribed period must "exceed the greater of—(I) the adjusted basis of such building (and its structural components), or (II) $5,000." The parties have stipulated that "The total building basis (i.e., original cost) before the rehabilitation is $68,975.00."[3] Because the adjusted basis of the building

---

SEC. 48. DEFINITIONS; SPECIAL RULES.

(g) SPECIAL RULES FOR QUALIFIED REHABILITATED BUILDINGS.—For purposes of this subpart—

(1) QUALIFIED REHABILITATED BUILDING DEFINED.—

(A) IN GENERAL.—The term "qualified rehabilitated building" means any building (and its structural components)—

(i) which has been substantially rehabilitated,

\* \* \* \* \* \* \*

(C) SUBSTANTIALLY REHABILITATED DEFINED.—

(i) IN GENERAL.—For purposes of subparagraph (A)(i), a building shall be treated as having been substantially rehabilitated only if the qualified rehabilitation expenditures during the 24-month period selected by the taxpayer (at the time and in the manner prescribed by regulations) and ending with or within the taxable year exceed the greater of—

(I) the adjusted basis of such building (and its structural components), or

(II) $5,000.

\* \* \* \* \* \* \*

(2) QUALIFIED REHABILITATION EXPENDITURE DEFINED.—

(A) IN GENERAL —The term "qualified rehabilitation expenditure" means any amount properly chargeable to capital account which is incurred after December 31, 1981—

\* \* \* \* \* \* \*

(ii) in connection with the rehabilitation of a qualified rehabilitated building.

[3] The same paragraph of the stipulation also states that "For purposes of applying the 'substantial rehabilitation test' of I.R.C Section 48(g)(1)(C), the petitioners allocated $7,200.00 of the purchase price to land and the remainder to building." The Commissioner has not

exceeded $5,000, petitioners' qualified rehabilitation expenditures were required to exceed such adjusted basis in order for those expenditures to qualify for the credit. However, the parties have stipulated that "petitioners incurred and paid expenses to rehabilitate the building in the total amount of $51,610." Even assuming that this entire amount constituted "qualified rehabilitation expenditure[s]," it still does not exceed the adjusted basis of $68,975. Accordingly, the claimed credit must be disallowed by reason of section 48(g)(1)(C)(i).

Petitioners contend, however, that the building should be considered as consisting of two separate parts, (1) the first floor rental apartment, and (2) the personal residential portion above; and that when the building is thus bifurcated, the credit is available because the expenditures attributable to the rental unit exceed the allocable portion of the adjusted basis of that unit. In terms of specific figures, the parties have stipulated that "$39,465 is attributable, through specific identification of costs, to rehabilitation of the rental portion." And petitioners have allocated $21,607 of the adjusted basis of the building to the rental portion.[4] Plainly, petitioners are entitled to prevail if the building is thus to be fragmented for the purpose of the credit. The $39,465 expenditure portion certainly exceeds the $21,607 portion of the adjusted basis of the building. However, we reject petitioners' arithmetically correct argument as based on the false premise that the building may be divided for this purpose.

The language of section 48(g) does not support petitioners' contention that a portion of a building may be "substantially rehabilitated" where the building as a whole does not meet this test. None of the relevant Code

---

challenged that allocation. Nevertheless, the allocation appears inconsistent with the parties' stipulation that the building has an adjusted basis of $68,975, because $72,560 (the combined cost of land and building) minus $7,200 (the amount allocated to the land) equals $65,360 rather than $68,975. However, because other unexplained factors may possibly be relevant to a computation of the adjusted basis of the building, we accept the $68,975 figure to which the parties have stipulated.

[4] The record does not reveal the process by which petitioners derived the $21,607 figure as the adjusted basis of the rental portion. The stipulation states that "The petitioners attributed 32% of the square footage of the building to the rental portion. Petitioners used a basis for the rental portion of $21,607.00 (although there is no explanation for the mathematical discrepancy between that figure and 32% of $68,975.00, which would be $22,072.00.)" Since either figure would support petitioners' position, we accept the $21,607 figure for convenience without any implication that this figure is correct.

provisions make explicit or implicit reference to a portion of a building. Section 48(g)(1)(A) and section 48(g)(2)(A)(ii) both use the term "qualified rehabilitated building." Section 48(g)(1)(A) defines "qualified rehabilitated building" as "any building (and its structural components)" that meets certain standards. Finally, section 48(g)(1)(C)(i) defines "substantially rehabilitated" in terms of "a building." Thus, section 48(g) does not state, nor can it fairly be read to imply, that a portion of a building can be considered "substantially rehabilitated."

The history of section 48(g) supports the conclusion that an entire building must be "substantially rehabilitated" in order for a taxpayer to be entitled to the credit. Section 212(b) of the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 235-240, amended section 48(g) to read as it is applicable here. See *supra* note 2. Prior to amendment, the provisions of section 48(g) that we regard as significant read as follows:

SEC. 48(g). SPECIAL RULES FOR QUALIFIED REHABILITATED BUILD-INGS.—For purposes of this subpart—

   (1) QUALIFIED REHABILITATED BUILDING DEFINED.—

     (A) IN GENERAL.—The term "qualified rehabilitated building" means any building (and its structural components)—

     (i) which has been rehabilitated,

     \*      \*      \*      \*      \*      \*      \*

     (C) MAJOR PORTION TREATED AS SEPARATE BUILDING IN CERTAIN CASES.—Where there is a separate rehabilitation of a major portion of a building, such major portion shall be treated as a separate building.

We note that the amended provisions differ from prior law in at least two significant respects. In the first place, the new provisions introduced in 1981 by ERTA require that a qualified rehabilitated building be "substantially rehabilitated" in contrast to the earlier provisions, which required merely that it be "rehabilitated." In the second place, and of greater significance, prior law provided that in case of "a separate rehabilitation of a major portion of a building, *such major portion shall be treated as a separate building.*" (Emphasis supplied.) Thus, before the effective date of the amendments made by ERTA, a taxpayer might be allowed the credit for "qualified rehabilitation expenditures" for the rehabilitation of a major portion of a building. When

Congress enacted ERTA, it eliminated the "major portion" rule, and, as discussed previously, see *supra,* pp. 248-249, the language remaining in section 48(g) refers only to buildings, not to portions of buildings. The elimination of the only language that allowed a credit for qualified rehabilitation expenditures where only a portion of a building had been rehabilitated is strong evidence that Congress did not intend to make the credit available in respect of a portion of a building.

Petitioners point out that prior to the effective date of ERTA, only 10 percent of the qualified rehabilitation expenditures was allowable as a credit, while after such effective date, 25 percent of such expenditures was allowable if incurred to substantially rehabilitate a certified historic structure. Compare section 46(a)(2) prior to its amendment by ERTA with section 212 of ERTA, Pub. L. 97-34, 95 Stat. 235-240. Petitioners argue that this increased credit indicates that Congress intended to expand the incentives to rehabilitate historic structures, and argue further that Congress could not have intended to restrict those incentives by denying the credit to a taxpayer who rehabilitated a portion of a historic structure. However, we see no necessary contradiction between the Congressional objective of increasing the tax benefit to be obtained upon rehabilitation of a historic structure on the one hand, and the objective of making sure that such rehabilitation renewed the entire structure and not merely a part of it on the other hand.

Moreover, a Treasury regulation governing a closely related situation indicates that the qualified rehabilitation expenditures must exceed the adjusted basis of a building, and not merely the adjusted basis of a part of a building, in order for a taxpayer to receive a credit for such expenditures. Section 1.48-12(b)(2)(iii)(A), Income Tax Regs., provides that "The term 'adjusted basis of the building' means the aggregate adjusted basis  * * *  in the building (and its structural components) of all of the parties who have an interest in the building." Section 1.48-12(b)(2)(iii)(B), Income Tax Regs., elaborates on this concept, stating that "in the case of a building that is divided into condominium units, the adjusted basis of the building means the aggregate

adjusted basis of all of the respective condominium owners * * * in the building." Thus, if the "adjusted basis" of a building means the adjusted bases of all of the different taxpayers who have an interest in the building, then surely such "adjusted basis" must also include the entire adjusted basis of a *single* taxpayer who owns the entire building.

Of considerable significance also is the position of the Department of Interior in respect of the meaning of a "certified historic structure." After all, the credit is based on a certification by the Secretary of Interior or his designated agent. Here the designated agent is Interior's National Park Service, which has issued regulations that closely relate to the problem before us. Of particular relevance in those regulations is the definition of a certified historic structure set forth as follows on behalf of the Department of Interior in the Code of Federal Regulations (36 C.F.R. sec. 67.2 (1985)):

> "Certified Historic Structure" means a building (and its structural components) which is of a character subject to the allowance for depreciation provided in Section 167 of the Internal Revenue Code of 1954 which is either (a) individually listed in the National Register; or (b) located in a registered historic district and certified by the Secretary [of Interior] as being of historic significance to the district. *Portions of larger buildings, such as single condominium apartment units, are not independently considered certified historic structures.* * * * [Emphasis supplied.]

And the certification here by the National Park Service was made specifically with respect to the entire property at 1932 Mt. Vernon Street, not with respect to any apartment within that building. It was that entire building that qualified as a certified historic structure, and the availability of the rehabilitation expense credit allowable by the Code must satisfy the test specified by Congress. That test requires that the rehabilitation expenses for the certified historic structure, i.e., the entire building, exceed the building's adjusted basis.

Petitioners rely upon a number of rulings and cases in which a single item of property is used for both business and personal purposes and allocations between them have been deemed appropriate in a variety of situations. For example, petitioners refer to section 1.121-5(e), Income Tax

Regs., relating to the one-time exclusion of a taxpayer's gain on sale of a principal residence, as supporting their contention that one building can be treated as two different buildings. In a like vein, they direct our attention to *Sharp v. United States*, 199 F. Supp. 743 (D. Del. 1961), affd. per curiam 303 F.2d 783 (3d Cir. 1962), involving the gain on sale of an airplane used for both personal and business purposes where an allocation of basis to the business portion was affected by depreciation deductions previously taken with respect to that portion. Similarly, they refer to *Paul v. Commissioner*, 206 F.2d 763 (3d Cir. 1953), where the owner of a partially constructed building completed it and sold the entire building at a profit within 6 months after completion, and where it was held that the portion of the gain on the entire building allocable to the partially constructed property was to be treated as capital gain since that portion had been held for more than 6 months. Many other cases, particularly of mixed business and personal use, could be added where different tax consequences apply to the respective allocable portions. Indeed, in this very case petitioners have taken depreciation deductions in respect of the rental portion of their property without challenge by the IRS.

However, all of the foregoing situations are irrelevant here. The history of the rehabilitation expense provisions persuasively indicates that Congress intended its 1981 amendment of section 48(g) to affect adversely the availability of the rehabilitation credit for even a major portion of a building. In none of the situations referred to by petitioners did any comparable congressional intent appear. Nor did they involve the inextricable interrelationship between the Internal Revenue Code and the determination of the Secretary of Interior as to the qualification of a building as a certified historic structure.

Petitioners also rely on certain judicial decisions and administrative rulings that interpret the word "building" for purposes of the investment tax credit, particularly *Endres Floral Co. v. United States*, 450 F. Supp. 16 (N.D. Ohio 1977), and Rev. Rul. 68-530, 1968-2 C.B. 37. However, such cases and rulings involve that aspect of the investment tax credit relating to whether an item of property is

tangible personal property, with respect to which the credit is allowable, rather than real estate, with respect to which the credit is unavailable. They are in no way concerned with the question whether an item of property, concededly real estate, is to be treated as though it were a separate building rather than a portion of a building. And they certainly do not involve the problem associated with the amount of rehabilitation expenditures required in order to qualify for the investment tax credit with respect to certified historic structures. Those rulings and cases are totally irrelevant here.

We have considered the various contentions made by petitioners, and have found them unconvincing.

*Decision will be entered for the respondent.*