COLORADO, LTD., MICHAEL L. COOK, A PARTNER OTHER THAN THE TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Colorado, Ltd. v. Commissioner
Docket No. 28891-89.
United States Tax Court
T.C. Memo 1992-157; 1992 Tax Ct. Memo LEXIS 158; 63 T.C.M. (CCH) 2435; T.C.M. (RIA) 92157; March 18, 1992, Filed *158 Decisions will be entered under Rule 155. P is a notice partner of CL. CL purchased a building from FNL on which FNL had made rehabilitation expenditures. CL computed its basis in the building for purposes of determining whether the building had been "substantially rehabilitated" by using FNL's basis in the building prior to the rehabilitation expenditures. Held, CL's basis in the building for purposes of determining whether CL had "substantially rehabilitated" the building so as to be entitled to any rehabilitation investment tax credit is CL's adjusted cost basis in the building less the amount of qualified rehabilitation expenditures made by FNL, but treated as incurred by CL. John Andrew Norval, for petitioner. Phillip A. Pillar, for respondent. SCOTT SCOTT MEMORANDUM OPINION SCOTT, Judge: On August 28, 1989, respondent mailed a notice of final partnership administrative adjustment (FPAA) to the tax matters partner of Colorado, Ltd. (CL), for the years ended December 31, 1983 and 1984, in which it was determined that CL was not entitled to a rehabilitation investment tax credit under section 46(a)(2)(F)[1] for 1983 and section 46(a)(3) for 1984 (which sections *159 provide for an investment tax credit on certain qualified rehabilitation expenses for rehabilitating of certain "section 38" property), based on rehabilitation expenditures made by F.N.L. Joint Venture (FNL). The tax matters partner did not file a petition with this Court contesting the adjustments made in the FPAA. On December 5, 1989, Mr. Michael L. Cook (petitioner), a notice partner of CL, filed a petition in this Court for readjustment of partnership items under section 6226. At the time of the filing of this petition, Mr. Cook resided in Austin, Texas. The issue for decision is how a purchaser of a building on which the seller had made rehabilitation expenditures in excess of the seller's basis in the building should determine whether the purchaser has "substantially rehabilitated" the building for the purposes *160 of the rehabilitation investment tax credit. Petitioner contends that whether the purchaser has substantially rehabilitated the building should be determined by comparing the seller's adjusted basis in the building prior to the seller's rehabilitation expenditures with the seller's rehabilitation expenditures. Respondent contends that to make this determination, the purchaser's cost basis in the building less the rehabilitation expenditures made by the seller should be used. All of the facts have been stipulated and are found accordingly. CL is a Texas limited partnership formed on or about October 1, 1983, to own, lease, renovate, develop, improve, operate, and manage an office building known as the Colorado Building. CL purchased the Colorado Building on or about October 21, 1983, from FNL pursuant to an Earnest Money Contract for $ 9,000,000. CL's adjusted basis in the Colorado Building is $ 6,920,543. CL incurred $ 777,330 in 1983 and $ 102,481 in 1984 in tenant finish costs, of which $ 654,279 in 1983 and $ 86,258 in 1984 qualify as "qualified rehabilitation expenditures" as defined in section 48(g)(2). Colorado Joint Venture is a general partnership with Rust Properties, *161 a partnership, and Wimgrove, Texas, Inc., a Texas corporation, as partners. Colorado Joint Venture is the general partner of CL. FNL is a Texas general partnership, and several of the partners of Rust Properties are also partners of FNL. FNL incurred $ 1,977,999 in qualified rehabilitation expenditures, as defined in section 48(g)(2) to renovate and rehabilitate the Colorado Building prior to its transfer to CL. At the time of the transfer of the property, 72 percent of the improvements with respect to which qualified rehabilitation expenditures were made by FNL were not yet placed in service. FNL did not claim any rehabilitation investment tax credit. Its adjusted basis in the Colorado Building at the time it commenced the renovation and rehabilitation was $ 1,814,846. CL timely filed a Form 1065 Partnership Return of Income for each of the taxable years 1983 and 1984. On the Form 3468 attached to its 1983 return of income, CL showed on line 6b, "Qualified rehabilitation expenditures--Enter total qualified investment for: 40-year-old buildings", the amount of $ 1,060,208 and on the Form 3468 attached to its 1984 return of income, CL showed on this same line the amount of *162 $ 77,420. On the Schedules K-1 attached to its return of income for each of the years 1983 and 1984, CL showed each partner's pro rata share of these amounts designating the amount in 1983 as "QUALIFIED REHABILITATION EXPENDITURES - ITC" and in 1984 as "OTHER PROPERTY ELIGIBLE FOR INVEST CREDIT". Respondent in the FPAA sent to the tax matters partner of CL stated that: For the years ended 12-31-83 and 12-31-84, it is determined that you are not allowed investment tax credit attributable to qualified rehabilitation expenditures of $ 1,060,208 and $ 77,420, respectively, as claimed on your returns, since it has not been established that these expenditures qualify for the credit under section 38 (as defined by section 48) of the Internal Revenue Code.
Petitioner contends that CL is entitled to claim the rehabilitation investment tax credit to which FNL was entitled when the Colorado Building was transferred to CL. On this basis, CL would determine whether the Colorado Building was substantially rehabilitated by comparing FNL's rehabilitation expenditures to FNL's basis in the building. Based on such a comparison, FNL's expenditures for rehabilitation exceeded FNL's basis *163 in the building. CL would therefore claim the rehabilitation investment tax credit to which petitioner contends FNL would have been entitled had FNL placed the Colorado Building in service prior to selling it to CL. Respondent takes the position that CL is not entitled to a rehabilitation investment tax credit to which FNL might have been entitled had it placed the Colorado Building in service but only to add the rehabilitation expenditures made by FNL to those made by CL to determine if the combined amount is in excess of CL's basis in the property. Since the total of FNL's and CL's rehabilitation expenditures are not in excess of CL's basis in the Colorado Building less FNL's rehabilitation expenditures, respondent contends that the Colorado Building has not been substantially rehabilitated by CL and therefore the partners of CL are not entitled to any rehabilitation investment tax credit with respect to the Colorado Building. Section 46(a)(2)(F) for 1983 and section 46(a)(3) for 1984 permit an investment tax credit to be taken on "section 38" property according to a rehabilitation percentage of qualified rehabilitation expenditures. Section 48(a)(1)(E) provides that section *164 38 property includes the portion of the basis of a qualified rehabilitated building attributable to qualified rehabilitation expenditures within the meaning of section 48(g). Section 48(g)(1)(A)(i) insofar as here pertinent defines a "qualified rehabilitated building" as any building which has been substantially rehabilitated. Section 48(g)(1)(C)(i) provides in part: (i) IN GENERAL.--For purposes of subparagraph (A)(i), a building shall be treated as having been substantially rehabilitated only if the qualified rehabilitation expenditures during the 24-month period selected by the taxpayer (at the time and in the manner prescribed by regulations) and ending with or within the taxable year exceed the greater of-- (I) the adjusted basis of such building (and its structural components), or (II) $ 5,000. The adjusted basis of the building (and its structural components) shall be determined as of the beginning of the first day of such 24-month period, or of the holding period of the building (within the meaning of section 1250(e)), whichever is later. For purposes of the preceding sentence, the determination of the beginning of the holding period shall be made without *165 regard to any reconstruction by the taxpayer in connection with the rehabilitation.
If the building is owned by a partnership, the substantial rehabilitation test is made at the entity level. Sec. 1.48-12(b)(2)(ix), Income Tax Regs.
Respondent argues that the CL partnership does not meet the requirements of section 48(g)(1)(C). Respondent states that the credit was properly disallowed in accordance with the provisions of section 48(g)(1)(C) and section 1.48-12(b)(2)(vii), Income Tax Regs., since CL's adjusted basis in the improvements ($ 6,920,543) less FNL's rehabilitation costs ($ 1,977,999) exceed the combined cost of the qualified rehabilitation expenditures made by FNL which are treated as incurred by CL plus those actually incurred by CL ($ 2,718,536). Petitioner contends that, in determining the adjusted basis for purposes of section 48(g)(1)(C)(i)(I), the seller's adjusted basis before the rehabilitation was started should be used. Petitioner contends that a plain reading of the statute does not require the conclusion that a purchaser is required to use his purchase price as the adjusted basis of the property to determine whether the building is substantially rehabilitated. *166 Petitioner concludes that the only relevant adjusted basis with which to compare the rehabilitation expenditure is the seller's adjusted basis before the rehabilitation began. For purposes of the substantial rehabilitation test, section 48(g)(1)(C)(i)(I) specifically refers to "adjusted basis". Adjusted basis is defined in sections 1011 and 1012 as the cost basis of property except as otherwise provided. There is nothing in the statute to indicate that Congress intended anything other than the basis of the taxpayer claiming the credit and in fact the statute read as a whole clearly indicates that it refers to the adjusted basis of the taxpayer claiming the credit. In our view, section 1.48-12(b)(2)(vii), Income Tax Regs., is a valid regulation properly interpreting the statute as referring to the adjusted basis of the taxpayer claiming the credit. Section 1.48-12(b)(2)(vii), Income Tax Regs., provides: (vii) Special rules when qualified rehabilitation expenditures are treated as incurred by the taxpayer. In the case where qualified rehabilitation expenditures are treated as having been incurred by a taxpayer under paragraph (c)(3)(ii) of this section, the transferee shall *167 be treated as having incurred the expenditures incurred by the transferor on the date that the transferor incurred the expenditures within the meaning of paragraph (c)(3)(i) of this section. For purposes of the substantial rehabilitation test in paragraph (b)(2)(i) of this section, the transferee's adjusted basis in the building shall be determined as of the beginning of the first day of a 24-month period, or the first day of the transferee's holding period, whichever is later, as provided in paragraph (b)(2)(ii) of this section. The transferee's basis as of the first day of the transferee's holding period for purposes of the substantial rehabilitation test in paragraph (b)(2)(i) of this section, however, shall be considered to be equal to the transferee's basis in the building on such date less-- (A) The amount of any qualified rehabilitation expenditures incurred (or treated as having been incurred) by the transferor during the 24-month period that are treated as having been incurred by the transferee under paragraph (c)(3)(ii) of this section, and (B) The amount of qualified rehabilitation expenditures incurred before the transfer and during the 24-month period by any other *168 person who has an interest in the building (e.g., a lessee of the transferor). The preceding sentence shall not apply, however, unless the transferee's basis in the building is determined with reference to (1) the transferee's cost of the building (including the rehabilitation expenditures), (2) the transferor's basis in the building (where such basis includes the amount of the expenditures), or (3) any other amount that includes the cost of the rehabilitation expenditures. In the event that the transferee's basis is determined with reference to an amount not described above (e.g., transferee's basis in one building is determined with reference to the transferee's basis in another building under section 1031(d)), the amount of the expenditures incurred by the transferor and treated as having been incurred by the transferee are not deducted from the transferee's basis for purposes of the substantial rehabilitation test. * * *
This regulation inherently makes the assumption that the price a purchaser pays for a building which has been rehabilitated or partially rehabilitated by the seller includes the amount spent by the seller on rehabilitation of the building, which another *169 section of the regulations under certain circumstances considers as made by the purchaser. Therefore under the regulation the basis to be used to determine if the building has been substantially rehabilitated is the purchaser's basis less the seller's rehabilitation costs. Petitioner argues that to apply section 48(g)(1)(C) as respondent contends it should be applied ignores the purpose of section 48(g), which was to encourage the renovation of existing older buildings. See Staff of Joint Comm. on Taxation, General Explanation of the Economic Recovery Tax Act of 1981 (J. Comm. Print 1981). FNL did in fact make renovations to the Colorado Building to such an extent that if it had placed the property in service it would have qualified for the investment tax credit. FNL did not place the building in service, but sold the building to CL prior to placing it in service. Petitioner does not explain how requiring a taxpayer who purchases a building after some renovation has been done on it to satisfy the substantial rehabilitation test to claim the investment tax credit by using his cost basis less the rehabilitation expenditures made by the seller frustrates the purpose of the statute. *170 The application of the regulation merely results in the purchaser having to use the cost basis to him of the building in its assumed unrehabilitated state. This record contains nothing to explain the difference in the seller's cost of the unrehabilitated building and the price paid by the purchaser for the building less the amount paid by the seller to rehabilitate the building. Petitioner next argues that section 1.48-12(b)(2)(x)Example (4), Income Tax Regs., addresses only the manner in which a purchaser of a partially rehabilitated building must compute the adjusted basis for purposes of the substantial rehabilitation test and should be limited to such situations. Accordingly, petitioner argues that the regulations were applied invalidly to CL. The regulations with respect to what constitutes "substantial rehabilitation" of a building in the hands of a purchaser from a seller who has done renovation work on the building read as a whole do not support this position of petitioner. Section 1.48-12(b)(2)(vii), Income Tax Regs., previously quoted, specifically refers to the transferee's basis as of the first day of the transferee's holding period being reduced by rehabilitation *171 expenditures made by the transferor but treated as made by the transferee. Example (4) of section 1.48-12(b)(2)(x), Income Tax Regs., does in fact use a situation involving a partially rehabilitated building. However, it is clearly illustrative of only one circumstance in which the transferee's basis in the building is used and does not change the provision of section 1.48-12(b)(2)(vii), Income Tax Regs., that where the transferee is claiming the investment tax credit, the transferee's adjusted basis in the building must be used to determine whether the building has been substantially rehabilitated. Under section 1.48-12(b)(2)(vii), Income Tax Regs., CL's adjusted basis in the Colorado Building is its cost basis less the rehabilitation expenditures made by FNL. Example (4) of section 1.48-12(b)(2)(x), Income Tax Regs., is not inconsistent with applying the regulation to CL. The regulations here involved were first proposed in 1985, but did not become final until October 7, 1988. Petitioner argues that the regulations should not be applied retroactively to CL. The Secretary may prescribe the extent to which regulations will be applied without retroactive effect. Sec. 7805(b). *172 Regulations are ordinarily retroactive to the effective date of the statute to which they relate, unless the Secretary limits such retroactive application. Pollack v. Commissioner, 392 F.2d 409, 411 (5th Cir. 1968), affg. 47 T.C. 92 (1966). See Alexander v. Commissioner, 97 T.C. 244, 250 (1991) (citing with approval section 1.48-12(b)(2)(iii)(A), Income Tax Regs., with respect to the year 1985). Lastly, petitioner contends that respondent has sought to apply section 1.48-12(b), Income Tax Regs., in a manner inconsistent with rulings outstanding at the time CL claimed the rehabilitation investment tax credit. In support of his contention, petitioner refers to private letter rulings issued by respondent. As a matter of law, petitioner cannot rely on private letter rulings as authority for a position taken by CL. Sec. 6110(j)(3). Furthermore, the letter rulings to which petitioner refers deal with factual situations different from those here present and in no way support petitioner's position. The amount of the purchase price paid by CL allocated to the building is $ 6,920,543. This cost basis is reduced by the amount *173 of any qualified rehabilitation expenditures incurred by the seller that are treated as having been incurred by the purchaser. Sec. 1.48(b)(2)(vii)(A), Income Tax Regs. Applying this regulation to the facts before us, the adjusted basis for purposes of section 48(g)(1)(C)(i)(I) is $ 4,942,544 (cost basis of $ 6,920,543 less $ 1,977,999 qualified rehabilitation expenditures incurred by FNL that are treated as having been incurred by CL). Accordingly, CL would be required to incur more than $ 4,942,544 of rehabilitation expenses including the $ 1,977,999 incurred by FNL but treated as incurred by CL during a measuring period selected by CL to satisfy the substantial rehabilitation test. Because the partnership's adjusted basis in the property for purposes of the substantial rehabilitation test ($ 4,942,544) exceeds the combined qualified rehabilitation costs treated as incurred ($ 1,977,999) and qualified rehabilitation costs actually incurred by CL ($ 740,537), the partnership is ineligible for the rehabilitation investment tax credit. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩